Lilia C. Pasquale, Administratrix of the Estate of Augustine
P. Pasquale v. Linda L. Genovese, Volkswagenwerk A.G.,
a/k/a Volkswagenwerk Aktiengesellschaft, Volkswagen of
America, Inc., Volkswagen Northeast Distributing and
Lindholm Motors, Inc.

[392 A.2d 395]

No. 293-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 11, 1978

418

*Niles, Johnson & Gibbs,* Woodstock, for Plaintiff.

*Bruce M. Lawlor,* Law Offices of *Douglas Richards,* Springfield, for Volkswagenwerk A.G.

**Larrow, J.** Plaintiff's intestate was killed in an automobile accident when the Volkswagen he was driving collided with a car operated by defendant Genovese, in Vermont. By her amended complaint, plaintiff seeks recovery from appellant here, Volkswagenwerk A.G., a/k/a Volkswagenwerk Aktiengesellschaft (VWAG), on a theory of defective design and manufacture. Only Vermont's personal jurisdiction over VWAG is in issue. The trial court denied a timely motion to dismiss, holding jurisdiction to be conferred by virtue of VWAG's 100% stock ownership of an American subsidiary corporation doing business in Vermont. The order makes no reference to VWAG's alternate claim that even if "long arm" jurisdiction does exist, the purported service of process was defective. VWAG has briefed both questions on appeal, even though only the first is referred to as the "controlling question of law" in the trial court order granting permission for interlocutory appeal under V.R.A.P. 5(b)(1). We affirm the ruling of the trial court on the first question, on grounds other than those stated by the trial court, but remand for adjudication of the second claim.

The facts relevant to disposition of the motion to dismiss were not found by the trial court. But they are agreed to by the parties, as contained in an affidavit from the corporate attorney of Volkswagen of America, Inc. (VWoA), upon whom the purported service was attempted. VWoA is the

United States importer of Volkswagen products, which are manufactured and sold to it in Germany by VWAG, the German corporation. A New Jersey corporation, VWoA is wholly owned by VWAG. In turn, VWoA resells the automobiles to distributors throughout the United States, who in turn resell them to dealers, who make the retail sales. The agreement between VWAG and VWoA negates agency. Most other Volkswagen importers throughout the world have similar agreements, but are not, for the most part, owned by VWAG. We can, and do, accept the factual background agreed to by the parties, even though it is not the subject of specific findings. See *State* v. *Murray,* 134 Vt. 115, 116, 353 A.2d 351, 353 (1976); *Oliver* v. *American Motors Corp.,* 70 Wash. 2d 875, 425 P.2d 647 (1967). Whether the facts are pleaded adequately is not before us. See *O'Brien* v. *Comstock Foods, Inc.,* 123 Vt. 461, 468, 194 A.2d 568, 573 (1963).

█ Under the facts set out in defendant's own affidavit, we think it a fair inference that VWAG is engaged in manufacturing and selling cars for the American market, of which Vermont is a part, through the system described. This activity we hold to be the "active participation in the Vermont market" upheld as a basis for jurisdiction in *O'Brien, supra,* and to meet the "minimum contacts" test first outlined in *International Shoe Co.* v. *Washington,* 326 U.S. 310 (1945). Our V.R.C.P. 4(e) embodies the "minimum contacts" test, by permitting out-of-state service upon a person whose contact or activity in the state, or such conduct or activity imputable to him, is sufficient to support a personal judgment against him. This case presents no challenge to the constitutionality of the rule itself, which in effect permits out-of-state service where due process requirements have been met, as provided in 12 V.S.A. § 913(b). The traditional standards of "fair play" and "substantial justice" are embodied in the rule. *Hanson* v. *Denckla,* 357 U.S. 235 (1958). We think it fair to view defendant's general course of conduct as purposefully directed toward Vermont and as inevitably affecting persons in this state; from this activity, it would seem equitable to imply submission to jurisdiction. See *Oliver* v. *American Motors Corp., supra,* 70 Wash. 2d at 888, 425 P.2d at 655.

While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. *Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.* [Emphasis added.]

*Gray* v. *American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 442, 176 N.E.2d 761, 766 (1961).

■ We uphold personal jurisdiction here on this basis, rather than on the one suggested by the trial court. There is, to be sure, some slight support in the language, at least, of a few reported cases for the view that total ownership and resulting control of a corporation subject to state jurisdiction, by another corporation, carries with it amenability to long-arm statutes, on an *alter ego* theory. See *Hughes* v. *Kaiser Jeep Corp.*, 246 F. Supp. 557, 562 (E.D.S.C. 1965). But close reading of the facts involved in these cases usually reveals the presence of other contacts, justifying the result without need for reliance upon ownership alone. And in *Delagi* v. *Volkswagenwerk A.G.*, 29 N.Y.2d 426, 432, 278 N.E.2d 895, 897, 328 N.Y.S.2d 653, 657 (1972), the New York Court of Appeals held that, to invoke jurisdiction on this basis, control over a subsidiary's activities must be so complete that the subsidiary is merely a department of the parent, a situation not presented here. The better view, we feel, is the one expressed by Judge Wilson in *Velandra* v. *Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir. 1964):

Following this decision [*International Shoe*] it would seem appropriate, for the purpose of determining the

amenability to jurisdiction of a foreign corporation which happens to own a subsidiary corporation carrying on local activities, to inquire whether the parent has the requisite minimum contacts with the State of the forum. Thus the ownership of the subsidiary carrying on local activities in Michigan represents merely one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts with the State of Michigan, but is not sufficient of itself to hold the present foreign corporations amenable to personal jurisdiction. [Footnote omitted.]

Applied to the instant case, it is our view that total ownership of the New Jersey corporation (VWoA), authorized to do business in Vermont, is one of the "minimum contacts" of the parent corporation (VWAG) with Vermont to be considered, but is not, in itself, full basis for the exercise of personal jurisdiction over VWAG. "Intentional and affirmative action" by the nonresident defendant, as we pointed out in *O'Brien, supra*, remains the key to personal jurisdiction, either under 12 V.S.A. §§ 851–858, relating to foreign corporations, or V.R.C.P. 4(e), relating to out-of-state service. We base our holding of jurisdiction here upon the defendant's active, planned participation in the Vermont market, through a chain of manufacture and distribution set up for the purpose, and through eventual sale of the vehicle in question in Vermont. *Huey* v. *Bates,* 135 Vt. 160, 375 A.2d 987 (1977) ; cf. *Davis* v. *Saab Scania, Inc.,* 133 Vt. 317, 339 A.2d 456 (1975) (suit did not arise or grow out of the contact or activity asserted as the basis of jurisdiction). None of these facts are contested on this appeal.

Appellant further argues that a reversal is required because personal service outside the state in a manner authorized by the rules of civil procedure has not been demonstrated, even though "minimum contacts" justifying the exercise of personal jurisdiction are established. *Ackerman* v. *Kogut,* 117 Vt. 40, 51, 84 A.2d 131, 138 (1951). If that point were properly before us, it would require examination, because jurisdiction in the abstract is insufficient without service of process. However, from the record, it does not appear that this precise point,

turning upon designation of VWoA as agent for service of process upon VWAG under Section 110(e) of the National Traffic and Motor Vehicle Safety Act (15 U.S.C. § 1399(e)), has ever been determined below. Further, it is not certified to us as a "controlling question of law" on appeal in the order allowing interlocutory appeal, approved as to form by the parties. It must be determined, upon proper factual presentation, before the trial court can proceed to exercise personal jurisdiction over the defendant. See *Bollard* v. *Volkswagenwerke, A.G.*, 313 F. Supp. 126 (W.D. Mo. 1970).

*The order denying defendant's motion to dismiss for lack of in personam jurisdiction is affirmed. So much of the order as purports to adjudicate sufficiency of service of process is vacated, and the cause is remanded for hearing and determination of that issue.*