Linda W. DUBREE, Individually and by her guardian, Edward W. Whiteman

v.

Robert D. MYERS.

Civ. A. No. 78–86.

United States District Court,
D. Vermont.

Oct. 25, 1978.

---

Francis R. Peisch, Burlington, Vt., for plaintiffs.

William H. Quinn, Pierson, Affolter & Wadhams, Burlington, Vt., for defendant.

## OPINION AND ORDER

COFFRIN, District Judge.

This is an action brought by plaintiff against defendant attorney alleging, *inter alia,* that defendant charged an unreasonable legal fee, failed to disclose a fee-splitting arrangement with other attorneys, negligently negotiated an accident settlement on plaintiff's behalf, withheld settlement proceeds and breached a fiduciary duty owed to plaintiff. Before the court at this time is defendant's motion to dismiss on the ground that the court lacks jurisdiction over the person of the defendant. *See* Fed.R.Civ.P. 12(b)(2). In that motion and accompanying affidavit and memorandum defendant argues vigorously that his contacts with Vermont have not been sufficient to support a judgment against him in this forum. His affidavit outlines his association with the plaintiff and the scope of his activity in Vermont. It presents the following undisputed facts.

Defendant is a resident of Arizona; he is an attorney licensed to practice law in that

state and not in the State of Vermont. He has never lived or owned property in Vermont. He has been in this state once in the last sixteen years.

On November 11, 1973 plaintiff, who was then a resident of Idaho, was injured while watching a motorcycle race in Phoenix, Arizona. She was hospitalized there. On November 14 plaintiff's husband asked Stratton Laggis, an Idaho attorney, to represent plaintiff and him in connection with the accident. The next day Laggis asked defendant to represent plaintiff and her husband in the State of Arizona and, if necessary, to file suit on their behalf. Defendant agreed, and immediately undertook an investigation of the accident in question. That investigation took place in Arizona, California and Idaho and not in Vermont. On December 3, 1973, plaintiff was transferred to a hospital in Idaho. On December 15, a month after plaintiff's husband had initially talked to Laggis and after Laggis had already asked defendant to represent plaintiff and her husband, plaintiff's husband entered into a written agreement with Laggis for legal representation.

Plaintiff was transferred from the Idaho hospital to one in Utah on January 4, 1974. She was moved to a second Utah hospital in March. On May 10, 1974, defendant filed suit on behalf of plaintiff and her husband in Superior Court for the State of Arizona, Maricopa County. Four days later, on May 14, 1974, plaintiff moved to a hospital in Vermont, and on June 19 her parents were appointed her guardians by the Probate Court for the District of Grand Isle, Vermont. Plaintiff has apparently been a resident of Vermont since that time.

After defendant filed the suit in Arizona, the parties to that suit undertook a significant amount of discovery which included depositions of plaintiff and her parents taken in Phoenix, Arizona. During the course of discovery and in order "to pursue plaintiff's claim for injuries in the Arizona litigation," defendant spent a week in July 1975 in the State of Vermont videotaping depositions of several physicians who had treated plaintiff. That same week defendant also met for two hours with plaintiff and her parents at their home in Grand Isle, Vermont, to discuss plaintiff's condition and the status of the litigation that defendant was undertaking on plaintiff's behalf. From August 1974 until March 1978 defendant and members of his firm also had written correspondence and phone conversations with plaintiff's parents and their Vermont attorney. These communications pertained to the status of the Arizona suit, and it is apparent that they were knowingly directed to persons residing in Vermont.

The Arizona suit ended in a negotiated settlement in which the defendants in that suit paid $355,000 as compensation for plaintiff's injuries.

## Discussion

▮ Because defendant is not a resident of Vermont and was not personally served here, this court cannot have jurisdiction over the defendant's person unless the requirements of the applicable Vermont long-arm statute and the fourteenth amendment's due process clause have been met. *Chittenden Trust Co. v. LaChance,* 464 F.Supp. 446, No. 77–65 (D.Vt. Mar. 14, 1978). *See also Partin v. Michaels Art Bronze Co.,* 202 F.2d 541, 542 (3d Cir. 1953); *Reilly v. P. J. Wolff & Sohne,* 374 F.Supp. 775, 776 (D.N.J.1974). Defendant was served personally by a U.S. Marshal in Arizona pursuant to Vt.R.Civ.P. 4(e)(1) and Fed.R.Civ.P. 4(e). Rule 4(e)(1) of the Vermont Rules provides:

(e) The following persons may be served with the summons and the complaint outside the state, in the same manner as if such service were made within the state, by any person authorized to serve civil process by the laws of the place of service or by a person specially appointed to serve it:

(1) A person whose contact or activity in the state or such contact or activity imputable to him is sufficient to support a personal judgment against him . . . .

Section 913(b) of 12 V.S.A., the applicable long-arm statute, provides further:

(b) Upon the service, and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

In an extended discussion of Vermont's long-arm jurisdiction under § 913(b) Judge Holden, speaking for this court, has pointed out that "12 V.S.A. § 913(b) and Rule 4 of V.R.C.P. reflect a conscious purpose to extend jurisdiction over individual defendants to the extent permitted by the due process clause within the limits defined in *International Shoe Co. v. Washington* . . . [and] *McGee v. International Life Insurance Co.* . . .." *McKennis v. Collingwood,* 55 F.R.D. 156, 159 (D.Vt.1972). Thus, the only question this court must answer is whether defendant Myers is accorded due process of law if, because of his acknowledged contacts with and activity in the State of Vermont, he can be subject to the jurisdiction of the courts of this forum in this action. For the following reasons we answer that question in the affirmative.

We have available much guidance on the issue of whether taking personal jurisdiction over an out-of-state defendant comports with the requirements of due process. *E. g., International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *McKennis v. Collingwood,* 55 F.R.D. 156 (D.Vt.1972); *Turner v. Baxley,* 354 F.Supp. 963 (D.Vt.1972); *Miller v. Cousins Properties, Inc.,* 378 F.Supp. 711 (D.Vt.1974); *Anderson v. Abex Corp.,* 418 F.Supp. 5 (D.Vt.1975), *aff'd mem.,* 539 F.2d 703 (2d Cir. 1976). The defendant must have had certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct.

at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *Accord, Kulko,* 436 U.S. at 87, 98 S.Ct. 1696. "[A]n essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State, . . . [and] the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko,* 436 U.S. at 92, 98 S.Ct. at 1697 (citations omitted).

Here we find the requisite circumstances. Plaintiff moved to Vermont approximately six months after defendant was retained to represent her and only four days after defendant filed suit on her behalf. For the next four years defendant maintained a gainful attorney-client relationship with plaintiff and her guardians while she resided in this state. Defendant and members of his firm corresponded with plaintiff and communicated with her by telephone, and defendant even made a business visit to plaintiff and her parents in Vermont for purposes of discussing her suit with them. Moreover, and of added significance, defendant came into Vermont to conduct several depositions of physicians who had treated plaintiff. Those depositions were a portion of the sum total of defendant's acts which comprised his legal representation of plaintiff. By entering the State of Vermont and actively serving here as plaintiff's legal representative, defendant "'purposefully availed himself' of the 'benefits and protections'" of Vermont laws. *Kulko,* 436 U.S. at 94, 98 S.Ct. at 1698. *See also Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. 1228. These benefits and protections apply not only to the taking of depositions, *see* 12 V.S.A. § 1248, Vt.R.Civ.P. 28(d); but also to the conduct of defendant's activities and his relationships with other persons while he was in Vermont solely on plaintiff's behalf. Because defendant has had the foregoing affiliation with Vermont, it is neither unfair nor unreasonable to require him to conduct his defense in this state.

Besides asserting that defendant's contacts with Vermont were too minimal to support jurisdiction, defendant has argued that the cause of action on which plaintiff is suing did not arise out of his Vermont activity. Assuming for the moment that defendant's contact with Vermont is barely adequate to support this court's personal jurisdiction over him, there is authority for the proposition that the cause sued on must arise out of that contact. *E. g., Deveny v. Rheem Mfg. Co.,* 319 F.2d 124, 127 (2d Cir. 1963); *Schuppin v. Unification Church,* 435 F.Supp. 603, 607–08 (D.Vt.1977). Defendant, however, would have us read that requirement too narrowly. The cause of action here arises out of the manner in which defendant allegedly conducted his professional relationship with and his representation of plaintiff. Defendant's affidavit shows unequivocally that his sole purpose for being in Vermont resulted from that relationship and was to carry out that representation. Because the cause of action arises out of the entire attorney-client relationship and because a significant portion of that relationship and of defendant's acts of representing plaintiff are centered in Vermont, the cause of action bears a sufficient relationship to defendant's Vermont activities to give this court personal jurisdiction over defendant. Furthermore, any requirement that a cause of action arise out of a non-resident defendant's activity in the forum state derives from the more general requirements of reasonableness and fairness underlying the due process clause. As we stated above, those requirements are met here. There occurred in this state a significant portion of the total activity that has allegedly caused the harm complained of.

Due process is not denied if this court assumes personal jurisdiction over the defendant. Defendant's motion to dismiss the complaint for improper service and for lack of personal jurisdiction is denied.

It is so ORDERED.