**Maurice MESSIER and Geraldine Messier**

v.

**WHITESTOWN PACKING CORPORATION.**

Civ. A. No. 81–351.

United States District Court, D. Vermont.

April 30, 1982.

L. Randolph Amis, James H. Wick Law Office, Burlington, Vt., for plaintiffs.

Thomas F. Heilmann, Burlington, Vt., for defendant.

## OPINION AND ORDER

COFFRIN, District Judge.

In this diversity action, plaintiffs Maurice and Geraldine Messier, Vermont citizens, seek compensatory and punitive damages from defendant Whitestown Packing Corporation, a New York corporation. Plaintiffs allege that, by misweighing and mishandling 92 veal calves that plaintiffs sold to defendant for slaughter and processing,

defendant caused plaintiffs to suffer loss in an amount exceeding $10,000. Jurisdiction is predicated on 28 U.S.C. § 1332.

Defendant moves to dismiss on the ground that this court lacks jurisdiction over the defendant. Alternatively, defendant requests a transfer of this action to a federal district court in New York on the ground that the District of Vermont is an inconvenient forum.

The affidavits of plaintiffs and defendant's president, Frank Gerace, establish the following facts. Maurice Messier phoned defendant's office in Utica, New York, and told Gerace that he had veal calves to sell. Gerace quoted a price for "red calves" and a higher price for "white calves." The parties reached an agreement that defendant would purchase the calves and pay commensurate with grade. Gerace then contacted Jim Stagner, an independent contractor who hauls livestock,[1] and instructed him to make arrangements to pick up plaintiffs' calves. Stagner subsequently transported the calves from plaintiffs' farm in Enosburg Falls to defendant's plant in Utica where defendant weighed, graded, and analyzed the calves. Although plaintiffs apparently anticipated a white grading, the calves were classified as red calves. Plaintiffs were paid accordingly.

In their complaint, plaintiffs allege that defendant negligently processed and weighed the calves, willfully and wantonly tampered with the weighing scales, and willfully and wantonly manipulated the calves. The gist of defendant's motion to dismiss is that, because each aspect of defendant's alleged misbehavior took place in New York, plaintiff may not employ the long arm of Vt.Stat.Ann. tit. 12, § 913, to enable this court to obtain personal jurisdiction over defendant.

Pursuant to Vt.R.Civ.P. 4(e),[2] plaintiff served a summons and complaint on defend-

---

1. Plaintiffs' affidavit states that Stagner was "employed or hired" by defendant. Neither in papers filed with the court nor at the hearing on the motion to dismiss held on April 19, 1982, have plaintiffs disputed defendant's assertion that Stagner is an independent truck own-

er/operator who does not grade, weigh, or count calves for defendant.

2. Rule 4(e) provides:
   Personal Service Outside the State. A person whose contact or activity in the state or

ant in Utica, New York. Rule 4(e) provides for personal service outside the state upon defendants having contacts with the state sufficient to sustain personal jurisdiction under one of Vermont's two long arm statutes, Vt.Stat.Ann. tit. 12, § 913(b).[3] Section 913(b) provides:

> Upon the service, and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

In determining whether we have personal jurisdiction over defendant by virtue of out of state service under section 913(b), we are bound by the state court construction of the long arm statute. *Braman v. Mary Hitchcock Memorial Hospital*, 631 F.2d 6, 8 (2d Cir. 1980). In *Pasquale v. Genovese*, 136 Vt. 417, 392 A.2d 395 (1978), the Vermont Supreme Court stated that Rule 4(e), which tracks the language of section 913(b), embodies the minimum contacts test outlined in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), thereby raising the inference that the long arm statute permits service whenever due process requirements are met. The federal district courts in Vermont have adopted the position that "12 V.S.A. § 913(b) and Rule 4 of V.R.C.P. reflect a conscious purpose to extend jurisdiction over individual defendants to the extent permitted by the due process clause within the limits defined in *International Shoe Co. v. Washington* . . . [and] *McGee v. International Life Insurance Co.*

[ (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223] . . . ." *McKennis v. Collingwood*, 55 F.R.D. 156, 159 (D.Vt.1972), *followed in Dubree v. Myers*, 464 F.Supp. 442 (D.Vt.1978). We concur with the author of the Reporter's Notes that accompanied Rule 4(e) when it was promulgated in 1971 that section 913(b) "reaches to the outer limits permitted by the due process clause." *See Braman*, 631 F.2d at 7–9.

Due process requires that an out of state defendant be subject to the personal jurisdiction of the court. In order for this court to have personal jurisdiction over the defendant, the defendant must have had certain minimum contacts with Vermont "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). On the one hand, mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). On the other hand, "[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239, it has clear notice that it is subject to suit there . . . ." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In a less clear-cut case, a court must determine whether it is "reasonable, in the context of our federal system of government, to require the corporation to

such contact or activity imputable to him is sufficient to support a personal judgment against him may be served with the summons and the complaint outside the state, in the same manner as if such service were made within the state, by any person authorized to serve civil process by the laws of the place of service or by a person specially appointed to serve it.

An affidavit of the person making service shall be filed with the court, stating the time, manner, and place of service. Such service

has the same force and effect as personal service within the state.

3. Rule 4(e) was amended in 1979 to conform to *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The amendment eliminated provisions for out of state service on a defendant whose only contacts with Vermont are attachable property or marital status. From its promulgation in 1971 until the present, Rule 4(e) has incorporated the language of § 913(b). *See* Reporter's Notes to 1979 Amendment.

defend the particular suit which is brought there." *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 158. In assessing the reasonableness of asserting jurisdiction, a court must consider any relevant factors, including the relationship between the defendant and the forum, the forum state's interest in adjudicating the dispute, the burden on the defendant, the plaintiff's interest in securing convenient and effective relief, judicial efficiency, and the dictates of interstate federalism. *World-Wide Volkswagen*, 444 U.S. at 292–94, 100 S.Ct. at 564–65.

The affidavits before the court disclose sufficient "affilitating circumstances," *Hanson*, 357 U.S. at 246, 78 S.Ct. at 1235, to enable this court to assume personal jurisdiction over defendant. The Gerace affidavit states: "Whitestown Packing Corporation does purchase calves which are grown in Vermont but in over ninety-nine percent (99%) of the cases, the farmers or other individuals who own the calves contact Whitestown rather than having Whitestown contact them." This statement indicates both that defendant's purchase of calves from plaintiff was not an isolated incidence of business with Vermont farmers, and that, occasionally at least, defendant solicits this business. Plaintiffs' affidavit confirms the implications we draw from defendant's affidavit by naming five Vermont veal growers or cattle dealers with whom plaintiffs knew defendant had done business.[4] In addition to more or less regularly doing business with Vermont farmers, defendant took the overt step of contacting Jim Stagner, directing him to arrange with Mr. Messier a time to pick up the calves, and paying Stagner for transporting the calves from Vermont to New York.

Under these circumstances, it is reasonable for this court to assert jurisdiction over defendant. Most importantly, the defendant has established an ongoing business relationship with individuals in Vermont.

Additionally, Vermont has a strong interest in protecting its farmers from the fraud and negligence of out of state concerns that purchase Vermont farm products. The burden on defendant of transporting its witnesses to neighboring Vermont is not severe.

We believe that the Vermont state courts would concur in our finding of jurisdiction. The Vermont Supreme Court has held that "active, planned participation in the Vermont market" is the key to personal jurisdiction. *Pasquale*, 136 Vt. at 421, 392 A.2d 395. This participation may be direct or indirect. *O'Brien v. Comstock Foods, Inc.*, 123 Vt. 461, 464, 194 A.2d 568 (1963) (Holden, J.). "The vital factor ... is the intentional and affirmative action on the part of the non-resident defendant in pursuit of its corporate purposes within this jurisdiction." *Id.* (discussing Vt.Stat.Ann. tit. 12, § 855). The Gerace affidavit evidences defendant's significant participation in the Vermont livestock market.

Defendant's reliance on *Robinson v. International Industries Limited, Inc.*, 139 Vt. 444, 430 A.2d 457 (1981); *Bard Building Supply Co. v. United Foam Corp.*, 137 Vt. 125, 400 A.2d 1023 (1979); and *Davis v. Saab Scania of America, Inc.*, 133 Vt. 317, 339 A.2d 456 (1975), is misplaced. In each of these cases, the issue facing the Vermont Supreme Court was whether the trial court had personal jurisdiction over a defendant who was served under the alternative long arm statute, Vt.Stat.Ann. tit. 12, § 855. Section 855 permits service upon the Secretary of State in lieu of out of state service on a foreign corporation with the limitation that process may be served only "in any action or proceedings against it arising or growing out of that contact or activity" which supports Vermont's assertion of jurisdiction. In the instant case, in which defendant's president was served in Utica, neither due process,[5] nor the applicable long

---

4. Additionally, plaintiffs assert that defendant has employees or agents who, over the past eight years, have regularly bought cattle or calves at auctions in five Vermont towns. De-

fendant's affidavit neither confirms nor denies participation in Vermont auctions.

5. In *Davis*, the court said: *"To satisfy the due process requirements of the Fourteenth*

arm statute[6] require plaintiff to show that his claim for relief arises out of the contacts that defendant has with Vermont. *See Braman,* 631 F.2d at 7–9; *Pasquale,* 136 Vt. at 419, 392 A.2d 395.

The purpose of this opinion and order is to apprise the parties of the framework under which this court views the issue of personal jurisdiction over an out of state defendant, as well as to rule on the pending motion. If at trial the evidence establishes that defendant's contacts with Vermont are insubstantial, defendant may raise the jurisdictional issue at that time.

Defendants have also requested that the court transfer this action to federal district court in New York. 28 U.S.C. § 1404(a) empowers the court to transfer a civil action to a district where it might have been brought if transfer is in the interest of justice and is convenient for the parties and witnesses. We decline to transfer this action; the burden on defendant and its witnesses of travelling to a neighboring state for trial is outweighed by the plaintiff's venue privilege. Transfer of this action, which would inconvenience plaintiff and further delay trial in this matter, would not serve the interest of justice.

For the reasons set forth above, defendant's motion to dismiss and its request to transfer are denied.

*Amendment,* the requirements explicitly stated in the statute must be met; the suit must arise or grow out of the contact or activity asserted as the basis of jurisdiction." 133 Vt. at 321, 339 A.2d 456 (emphasis added). The United States Court of Appeals for the Second Circuit recently corrected any misapprehension that due process demands a nexus between the contacts and the cause of action: "jurisdiction can be asserted even though the cause of action is unrelated to the defendant's activities in the forum state provided that the activities are sufficiently continuing and substantial to make the assertion of jurisdiction reasonable." *Braman,* 631 F.2d at 8.

**6.** It is open to question whether, even under Vt.Stat.Ann. tit. 12, § 855, a plaintiff's claim must arise out of the defendant's contact with Vermont. In *Bard Building Supply,* the defendant Pennsylvania corporation, not otherwise

doing business in Vermont, accepted a phone order for foam and shipped it to Vermont C.O.D. Plaintiff's claim was for damages resulting from claimed defects in the flame retardant characteristics of the foam. The Supreme Court reversed an order dismissing plaintiff's complaint, holding that the C.O.D. shipment into Vermont was a purposeful commercial act by which defendant availed itself of the privilege of conducting activities within Vermont. Although plaintiffs' claim was unrelated to the defendant's collection of the purchase price within Vermont, the act of sending the foam C.O.D. was sufficient contact to give the court jurisdiction over the defendant. *See also Robinson,* 139 Vt. 444, 430 A.2d 457 (discussing and distinguishing *Bard Building Supply*). *But cf. Davis,* 133 Vt. at 321, 339 A.2d 456 (discussed in footnote 5 above).