Trudo v. Meguiar, No. S1474-01 Cncv (Katz, J., Aug. 31, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                                  Docket No.  CnCv


TRUDO

v.

MEGUIAR


ENTRY
(Personal Jurisdiction)


Plaintiff initiated this suit to recover for personal injury resulting from slipping off his boat deck, which he had waxed with defendant Meguiar's boat wax.  Defendant has moved to dismiss the action for lack of personal jurisdiction.

Defendant Meguiar, a California corporation, manufactures a number of wax products for boats and cars at its Tennessee factory.  These

products are widely distributed to stores throughout the United States and in International markets. In Vermont, Meguiar's wax products can be found at K-Mart, Wal-Mart, Autozone, as well as several auto supply stores; most of these can be located through Meguiar's web site. Customers, including Vermont residents, can also make purchases from the web site directly. Meguiar also sponsors a nationally syndicated car collector's show, a radio version of the same, and a British car rally in Stowe each year. Aside from these "marketing contacts," however, Meguiar's does not have any other connection to Vermont or any physical presence in the state. It does not own any Vermont property, employ any Vermont residents, have an agent for service of process, and it is not registered with the Secretary of State to do business in Vermont.

In this particular transaction, plaintiff bought his can of Meguiar's boat wax from a mail-order-catalogue/wholesale business located in New Jersey. Meguiar has introduced evidence that it sold the wax to this New Jersey wholesaler without any idea or control over where the company sent its catalogues or marketed itself. The wholesaler, an independent company from Meguiar, never represented more than 1% of Meguiar's total sales, and Meguiar has not for some years even sold wax to them. Meguiar argues that this connection is too tenuous to base personal jurisdiction over them.

**Personal Jurisdiction**

Personal jurisdiction refers to whether a forum court has the power to hear a dispute and render a valid judgment over a defendant, one that will receive the full faith and credit of other courts. Lakeside Equip. Corp. v. Town of Chester, 173 Vt. 317, 321–22 (2002); see also Burnham v. Superior Court, 495 U.S. 604, 609 (1990) (collecting cases). A defect in

personal jurisdiction will invalidate a judgment against defendant.  While jurisdiction is never an issue when the defendant is a resident of the forum state, questions linger for out-of-state defendants.   In Vermont, long-arm jurisdiction over foreign defendants is governed by statute and allows us to reach out and assert it to the full extent permitted by the Due Process Clause.  12 V.S.A. § 855; Chittenden Trust Co. v. Bianchi, 148 Vt. 140, 141 (1987).  The statute does limits jurisdiction to "any action or proceedings against [the foreign corporation] arising or growing out of that conduct or activity."  12 V.S.A. § 855; Huey v. Bates, 135 Vt. 160, 163–64 (1977) ("Having found the requisite contact and activity on the part of the defendant, the question remains as to whether the present litigation arises or grows out of this contact and activity.'").[1]  This requirement, however, dovetails to the applicable due process requirements; thus, the issue in this case, like any Vermont personal jurisdiction case, is whether federal constitutional law will allow jurisdiction.  Id.; Chittenden Trust Co., 148 Vt. at 141.

**General Jurisdiction**

---

[1] Vermont actually has two long-arm jurisdiction statutes.  The second codified at 12 V.S.A. § 913 and V.R.C.P. 4(e) allows for direct out-of-state service as an alternate to the in-state service of § 855.  Both statutes have been interpreted to extend jurisdiction to the limits of the due process clause, but only § 855 has been interpreted to require "the 'arising or growing out of' element to sustain jurisdiction."  Braman v. Mary Hitchcock Mem'l Hosp., 631 F.2d 6 at 8–9 (2d Cir. 1980).  In the immediate case, plaintiff served Meguiar's in accordance with § 855.  Plaintiff has been less than salient about which statute he claims for jurisdiction; nevertheless, we are persuaded by the lack of general jurisdiction and plaintiff's choice for service of process that plaintiff's argument is for limited jurisdiction through § 855.

Personal jurisdiction over an out-of-state defendant is generally divided into two types, general and specific. Helecoperos Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984). The difference between them is significant. General jurisdiction means that a foreign defendant's contacts with the forum state are so continuous, pervasive, and substantial that jurisdiction may be asserted over the defendant regardless of the cause. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–49 (1952) (expanding on the idea of "minimum contacts" set forth in International Shoe Co. v. Washington, 326 U.S. 310 (1945)); Bechard v. Constanzo, 810 F. Supp. 579, 583–84 (D. Vt. 1998) ("The exercise of general jurisdiction comports with due process requirements when it is based on general business contacts which are continuous and systematic in nature. It is not the quantity of contacts, but the nature and quality of a defendant's activities which will confer jurisdiction.").

This type of jurisdiction is appropriate where the defendant's presence in the state is of such a nature that the forum is the proper place to bring any claim against it. For example, in the present case general jurisdiction would make Vermont the proper forum for any claim against Meguiar including: an employee's discrimination claim, resolution of a contract dispute between Meguiar and one of its suppliers, as well as all product liability claims, regardless of the site of the accident or any limitations the company might have on its regional marketing and distribution. These examples illustrate the ridiculousness of such a proposition. Meguiar's contacts with Vermont are not nearly pervasive enough to meet the rigorous requirements of general jurisdiction. Helicopteros, 466 U.S. at 417–18; see generally M. Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610, 635 n.36 (1988) (suggesting that traditional indicia of general jurisdiction are that the forum acts as a "home base" for at least a local office); see also Braman, 631 F.2d at 9–10

(suggesting that a New Hampshire hospital with multiple Vermont contacts and a 30% patient basis of Vermont residents would qualify for general jurisdiction). While the lack of any physical presence here would be enough to proscribe such a claim, the overall limited nature of Meguiar's contacts fail to meet the elevated standards of general jurisdiction. Helicopteros, 466 U.S. at 414–15.

## Specific Jurisdiction

Plaintiff wisely gives no more than lip service to the idea of general jurisdiction and concentrates his arguments on specific jurisdiction. This limited form of jurisdiction allows the forum to hear cases involving foreign defendants when the cause of action arises from the defendants' "significant" contacts with the state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). The purpose of this limited jurisdiction is to allow states to hear cases involving defendants who have reached into the forum and caused isolated harm while still protecting those defendants and their right to due process from overweening state sovereignty. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 294 (1980); see also L.Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 Sup. Ct. Rev. 77, 88–96. Under this analysis, the defendant's minimum contacts exist only in correspondence to "the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)); see also Int'l Shoe Co., 326 U.S. at 326 (introducing the idea of jurisdiciton based on "minimum contacts" that do not offend "traditional notions of fair play and substantial justice"). As one commentator has summarized the standard:

In Burger King v. Rudzewicz, the Supreme Court reaffirmed the

> general rule that specific jurisdiction requires a showing by the plaintiff that: (1) the nonresident defendant has purposefully established (i.e., not "random, fortuitous or attenuated") contact with the forum state; and (2) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts.

J. Moore, <u>Moore's Federal Practice</u>, § 108.42, at 108-53 (3d. ed. 2001). Both of these elements are necessary to determine if the defendant's contacts satisfy the requirement of minimum contacts. See, e.g., <u>Chew v. Dietrich</u>, 143 F.3d 24, 28 (2d Cir. 1998). In this case, there is little debate that Meguiar has made several contacts with Vermont. By supplying products to retailers in Vermont to sponsoring a nationally syndicated show, Meguiar has reached out to the Vermont market. In this case, however, the contact at issue is not a part of Meguiar's normal marketing contacts with Vermont. Plaintiff has not alleged that he was familiar with Meguiar
s wax products, that he had purchased them in Vermont before, that he had visited their website, or that he had seen any of their syndicated programs. Instead, plaintiff purchased the wax from a mail order catalogue, which Meguiar claims was an unknown third party that distributed its product in Vermont without Meguiar's knowledge or consent. Moreover, Meguiar's particular Vermont contacts focus on collector cars and car wax, while this claim arises out of boat wax—a different market.

### Nexus Between Cause of Action and Meguiar's Contacts

Notwithstanding the lack of proximate cause between Meguiar's Vermont contacts and plaintiff's purchase, plaintiff would like to include every contact Meguiar's has ever made with Vermont to establish jurisdiction. Such an approach, however, begins to look very quickly like general jurisdiction. Specific jurisdiction and § 855 require more of a

nexus between the lawsuit and the activity asserted as a basis for jurisdiction. Davis v. Saab–Scania of Am., 133 Vt. 317, 320–21 (1975); see also Anderson v. Abex Corp., 418 F. Supp. 5, 8 (D. Vt. 1976).[2] Davis is particularly instructive on this question of what contacts to look at for the purpose of jurisdiction. In that case, the defendant, an auto importer, had multiple contacts with Vermont, including intentionally conducting business in Vermont and actively participating in this market. Davis, 133 Vt. at 319. While these were not enough to create general jurisdiction, each contact was arguably enough to support specific jurisdiction. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (only one contact that creates a "substantial connection" with the forum state is necessary). Jurisdiction, however, was improper because these contacts, while related to the lawsuit, did not give rise to the lawsuit. Id. at 320–21. Thus, plaintiff's argument was akin to the quantity-over-quality fallacy discredited for specific jurisdiction. See Burger King, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts.'"). In this case, several of Meguiar's contacts fall away because they are not related to the underlying cause of action. There is no allegation that plaintiff ever attended the Stowe car show, watched or

---

[2] The nexus requirement that the cause of action "arise or grow out of" the contacts was criticized in Braman as a misinterpretation of due process and was interpreted not to apply to 12 V.S.A. § 913 because it lacked § 855 language. 631 F.2d at 8. This interpretation was picked up in Messier v. Whitestown Packing Corp., 544 F. Supp. 8, 11 n.5 (D.Vt. 1982). We believe in the wake of Helicopteros, Burger King, and Ashai this nexus requirement has returned for constitutional purposes in some form. See Moore, at § 108.42[7]. The Supreme Court, however, has expressly declined to define the extent and proximity of this requirement. Helicopteros, 466 U.S. at 415 n.10.

listened to the car program sponsored by Meguiar's, or used the internet to find a Meguiar's dealer or purchase Meguiar's wax. Most importantly, none of these contacts or Meguiar's more regular distribution channels put the wax in plaintiff's hand. The test here is "but for" which of Meguiar's actions would plaintiff have avoided contact with the product. See Moore, at §108.42[7] [b] (collecting cases on various interpretations of "but for"). While this test may be liberal in imposing jurisdiction despite a tenuous chain of events, see, e.g., Shute v. Carnival Cruise Lines, 897 F.2d 377, 383–86 (9th Cir. 1990) ("but for" defendant's advertising, plaintiff would not have taken cruise), it rules out contacts with the forum state that are unrelated to the lawsuit. Once we begin to look at specific jurisdiction and § 855, we must look to those contacts that are casually responsible. Huey, 135 Vt. at 162–63.[3]

At the same time, we cannot reduce Meguiar's contacts with Vermont to merely the isolated transaction with the New Jersey wholesaler. That transaction, however unknowing it may have been, was part of a broader distribution system that Meguiar's was and continues to pursue. It is one that puts their product in nearly every state including Vermont. This purposeful contact of putting products into the stream of commerce and reaching out to individual states must be looked at as whole rather than piecemeal. Chew, 143 F.3d at 29–30 (recognizing that the nexus of contacts is a "but for" rather than a proximate cause test). In other words, it

---

[3] The point of this criterion is primarily to examine whether jurisdiction is warranted based on the defendant's reasonable anticipation of being hailed into the forum through its contact and only secondarily to examine the larger fairness issues of jurisdiction. World-Wide Volkswagen , 444 U.S. at 291–92; Hanson v. Denckla, 357 U.S. 235, 253 (1958) (adding the criteria of "purposeful availed" to the requirement of minium contact with the forum).

is not important that plaintiff here purchased the boat wax from an intermediary wholesaler because he could have purchased it on-line or at a local retailer.  See Tomra of North Am., Inc. v. Envtl. Prod. Corp., 4 F. Supp. 2d 90, 93 (D. Conn. 1998) ("[T]he fact that the foreign corporation's only contact with the state is through an independent contractor or distributor does not bar personal jurisdiction.").  In this way the facts before us differ from Davis where the Court noted that the cause of action, the purchase of a Saab in Connecticut by a Virginia couple, did not arise from the limited business Saab was registered with the Secretary of State to do, namely sell Saabs in Vermont.  Davis, 133 Vt. at 320–21.[4]  The plaintiff here, a Vermont resident, purchased Meguiar's boat wax in Vermont. Meguiar is not registered in Vermont to do a limited business, but to the extent that it is constructively, under § 855, it would include, at the very least, the distribution and sale of its wax products.  The fact that this specific intermediary was an out-of-state wholesaler with no connection to Meguiar does not dissipate or exclude its other national-level distributions including purposeful contacts with Vermont.  So while Meguiar's may have been surprised to learn that this particular bottle of wax ended up in Vermont, it was not a surprise to discover their product found its way to Vermont through the "stream of commerce."

**Stream of Commerce**

This narrows our focus to the ultimate question of whether merely

---

[4] To the extent that the present case and Davis share some similarities, we believe that Vermont law has shifted away from the stricter construction of Davis. See Brown v. Cal Dykstra Equip. Co., 169 Vt. 636 (1999); Dall v. Kaylor, 163 Vt. 274 (1995).

introducing the can of wax into the "Stream of Commerce" satisfies the requirement of "minimum contacts" under due process. Int'l Shoe Co., 326 U.S. at 326. This analysis of jurisdiction takes its name from World-Wide Volkswagen, in which the Supreme Court stated that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased in the forum State." 444 U.S. at 297–98. The World-Wide court also stated that:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States.

444 U.S. at 297.

The Supreme Court revisited Stream of Commerce contacts in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102 (1987). Unfortunately, the Court split 4–4 on the question of what level of activity in the Stream of Commerce would satisfy jurisdiction. Justice O'Connor spoke for four members in holding "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." 480 U.S. at 112. Therefore, in her view, Stream of Commerce requires "[a]dditional conduct [which] may indicate an intent or purpose to serve the market in the forum state." Id. Examples of such "additional conduct" might include such things as designing the product for the forum state, advertising in the forum state, providing advice to customers in the forum state, and marketing the product through a

distributor in the forum state.  <u>Id</u>.  Speaking for four other member of the court, Justice Brennan wrote that personal jurisdiction based on the placement of a product in the stream of commerce satisfies with due process, without showing additional conduct by the defendant.  480 U.S. at 117.  Under this view, so long as the defendant participates in the "regular and anticipated flow of products from manufacture to distribution to retail sale" in the forum State, and so long as the defendant is "aware that the final product is being marketed in the forum State," minimum contacts between the defendant and the forum state have been established.  <u>Id</u>.  Justice Stevens, writing for himself but also for two Justices who supported the Brennan view, stated that Asahi's regular delivery of a large volume of its products into the California market constituted minimum contacts even under Justice O'Connor's narrow version of the Stream of Commerce theory.  The Supreme Court has not again visited the Stream of Commerce.

Reviewing the record here, we are persuaded that Meguiar's conduct satisfies all three of the tests.  Obviously, the narrower test of Justice O'Connor is the more difficult to satisfy.  There is no evidence that Meguiar's boat wax was specifically formulated for Vermont, but the evidence shows that it was advertised in this State and that Meguiars has marketed and provided advice to Vermont users of wax via the internet and its distributors.  More obviously, this same evidence satisfies the Brennan test of "awareness."  Meguiar's, while maybe unaware of the specific can of wax involved, was aware that its products were being sold in Vermont and was actually taking steps to make sure it was sent here.  If one turns out enough cans of wax, as apparently Meguiar's does, it would certainly not surprise any manufacturer that some of those cans would eventually wend their way here, but Meguiar's web site shows that this distribution was more than "foreseeable"; it was conscious.  Finally, while Vermont is not

California, plaintiff has shown that Meguiar regularly supplies its products to this state in fairly large volume. When plaintiff bought his can of boat wax, he had at least three ways of doing so without leaving the state (retail, catalogue, or internet). Hence, Stevens's criteria is arguably met.

## Conclusion

With Meguiar's contacts satisfying the requirement of minimum contacts with Vermont, the only remaining issue is whether jurisdiction would be fair to Meguiar. In this respect, we note that Meguiar is an international manufacturer of wax products with $4 billion in annual sales and national distribution. Hence it should not be particularly surprised to be sued in any particular state. By contrast, the plaintiff in this case is a Vermont resident who bought the wax from in Vermont, used it in Vermont, and had his accident in Vermont. Aside from some inconvenience— probably minimal compared to being haled into any larger market Northeastern state—there is no other factor that would militate against trial here. We conclude, therefore, that jurisdiction would not violate fair play or substantial justice.

We also reject plaintiff's motion for Rule 11 sanctions against Meguiar for filing this motion. Plaintiff's contention that this area of the law is clear and settled belies the morass of contradictory, evolving jurisprudence that governs long-arm jurisdiction. To the extent that such debates are lessening and moving toward open jurisdiction, we simply note that neither we nor the law are there yet. This was a close call. Rule 11 allows for sanctions where a motion is made in bad faith, ill-formed opinion, or ignorance of settled law. V.R.C.P. 11(b). None of these apply to the present situation. While ultimately incorrect, Meguiar was well within its rights to challenge jurisdiction. We consider this case a close issue. Furthermore, this is defendant's first challenge to the issue and has not been accompanied by additional filings or any indicia that it was done in bad faith. Despite plaintiff's Rule 11 posturing, his motion was in large part a reply to Meguiar's motion to dismiss. Therefore, we find that neither part expended more energy or resources than necessary to argue a motion to

dismiss, and we will decline the request for sanctions and fees on both sides.

For the foregoing reasons, we conclude that plaintiff has shown that Meguiar should be subjected to specific personal jurisdiction here in Vermont, and therefore its motion to dismiss is denied.  Plaintiff's motion for sanctions is likewise denied.

Dated at Burlington, Vermont, _____, 2004.


_____
Judge