Daniel F. BRAMAN, Plaintiff–Appellant,

v.

MARY HITCHCOCK MEMORIAL HOSPITAL and Hitchcock Clinic, Inc., Defendants–Appellees.

No. 1205, Docket 80–7165.

United States Court of Appeals, Second Circuit.

Argued May 23, 1980.

Decided Sept. 2, 1980.

Jerome I. Meyers, Ascutney, Vermont, for plaintiff–appellant.

Black & Plante, White River Junction, Vermont (Garfield H. Miller, Hughes, Miller & Candon, Norwich, Vermont, on brief), for defendants–appellees.

Before OAKES and MESKILL, Circuit Judges, and SAND, District Judge.*

OAKES, Circuit Judge:

This appeal in a diversity action is from a dismissal for lack of jurisdiction over the defendants. Plaintiff, Daniel Braman, injured his hand at his place of employment in Hartland, Vermont, and was taken by his employer to the emergency medical treatment facilities of the defendants, Mary Hitchcock Memorial Hospital (the Hospital) and Hitchcock Clinic, Inc. (the Clinic), two New Hampshire corporations located in Hanover, New Hampshire. After treatment there, Braman brought an action for malpractice, which was dismissed by the United States District Court for the District of Vermont, James S. Holden, Chief Judge, under Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction over the Hospital and Clinic. The district court dismissed the suit because there was no showing that the cause of action arose from the contacts or activities asserted as grounds for jurisdiction. The court did not reach the question whether the Hospital and Clinic had contacts with Vermont that warranted taking jurisdiction over them despite a lack of any relation between those contacts and the present action. We reverse and remand for a hearing on the issue of whether their activities in the state are sufficient to make them subject to its jurisdiction.

■ The question whether a defendant's activities would support Vermont's exercise of jurisdiction is one of state law. *Arrowsmith v. United Press International,* 320 F.2d 219, 229 (2d Cir. 1963) (en banc). Under V.R.C.P. 4(e)[1] plaintiff served a summons and complaint on appellees Hospital and Clinic in the State of New Hampshire. Rule 4(e) incorporates the language of one of Vermont's two "long–arm" statutes, Vt. Stat.Ann. tit. 12, § 913(b),[2] which was enacted in 1968 in response to the State Supreme Court's invitation in *Avery v. Bender,* 124 Vt. 309, 313, 204 A.2d 314, 316–17 (1964). The law provides for suit against a party served out of state who has, or to whom may be imputed contacts or activities within the state "sufficient to support a personal judgment against him." As the Reporter's notes to V.R.C.P. 4(e) indicate, "[t]he statute reaches to the outer limits permitted by the due process clause."

■ The district court evidently assumed that service had been made by virtue of a different provision, Vt.Stat.Ann. tit. 12, § 855,[3] an "alternative"[4] long–arm statute.

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. V.R.C.P. 4(e) provides in part:
   (e) Personal Service Outside the State. The following persons may be served with the summons and the complaint outside the state, in the same manner as if such service were made within the state, by any person authorized to serve civil process by the laws of the place of service or by a person specially appointed to serve it:
   (1) A person whose contact or activity in the state or such contact or activity imputable to him is sufficient to support a personal judgment against him[.]

2. Vt.Stat.Ann. tit. 12 § 913 provides:
   (a) When process is served upon a party outside the state in such manner as the supreme court may by rule provide, the same proceedings may be had, so far as to affect the title or right to the possession of goods, chattels, rights, credits, land, tenements or hereditaments in the state as if the process had been served on a party in the state.
   (b) Upon the service, and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.
   (c) The provisions of subsection (b) are in addition to all existing manner of service, rights and remedies, and the availability of a personal judgment by reason of subsection (b) shall make the provisions of sections 855, 856, 891 and 892 of this title and section 1630 of Title 11 alternative and not inoperative. Thus service under Rule 4(e) and Vt.Stat.Ann. tit. 12, § 913 is "alternative" to service under Vt.Stat.Ann. tit. 12, § 855, the other long–arm statute.

3. Vt.Stat.Ann. tit. 12, § 855 provides:
   If the contact with the state or the activity in the state of a foreign corporation, or the contact or activity imputable to it, is sufficient to support a Vermont personal judg-

This section permits service upon the Secretary of State in lieu of service out of state upon a foreign corporation, again to the "outer limits" permitted by the due process clause, but with the single limitation that process may be served only "in any action or proceedings against it arising or growing out of that contact or activity" which supports Vermont's assertion of jurisdiction. In the instant case, in which service was made directly upon the corporation, plaintiff's claim for relief did not arise out of any contacts that defendants have with Vermont.

The district court correctly considered itself to be bound by the state court construction of the long–arm statute. *Deveny v. Rheem Manufacturing Co.,* 319 F.2d 124, 127 (2d Cir. 1963); 4 C. Wright & A. Miller, *Federal Practice and Procedure,* Civil § 1068, at 246 (1969). Correctly interpreting the Vermont cases the district court found that they required the "arising or growing out of" element to sustain jurisdiction under the alternate long–arm statute, Vt.Stat.Ann. tit. 12, § 855. The Vermont opinions, however, evidently proceeded on the basis of a misapprehension that due process demands such a nexus between the contacts and the cause of action. *Huey v. Bates,* 135 Vt. 160, 163–64, 375 A.2d 987, 990 (1977); *Davis v. Saab Scania of America, Inc.,* 133 Vt. 317, 321, 339 A.2d 456, 458–59 (1975). Although this impression of due process requirements was also conveyed by a panel of this court, *Deveny v. Rheem Manufacturing Co.,* 319 F.2d at 127, a Supreme Court decision subsequent to *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), namely *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), took the position that jurisdiction can be asserted even though the cause of action is unrelated to the defendant's activities in the forum state provided that the activities are sufficiently continuing and substantial to make the assertion of jurisdiction reasonable, *id.* at 446–48, 72 S.Ct. at 418–19. *See* 4 C. Wright & A. Miller, *supra,* Civil § 1069, at 261–62; *Restatement (Second) of Conflict of Laws* § 47 (1971); von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1142–44 (1966); *Developments in the Law, State–Court Jurisdiction,* 73 Harv.L.Rev. 909, 932 (1960); Comment, *Long–Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness,* 69 Mich.L.Rev. 300, 307 (1970). *See also Arrowsmith v. United Press International,* 320 F.2d 219, 233 n.20 (interpreting *Perkins v. Benguet Consolidated Mining Co.* as a case in which the "quantum of corporate activity was exceptionally large").

■ Thus the critical question for our purposes is whether the long–arm statute under which jurisdiction is claimed, Vt.Stat. Ann. tit. 12, § 913(b), incorporated in V.R. C.P. 4(e)(1), embodies the same limitation as the law interpreted by the district court, Vt.Stat.Ann. tit. 12, § 855, that is, whether it also requires the "arising or growing out of" element to sustain jurisdiction. Unlike § 855, § 913(b) does not on its face impose any such condition. In addition to the reporter's notes indicating that 4(e) and § 913(b) reach "to the outer limits permitted by the due process clause," we also have as guidance the case of *Pasquale v. Genovese,* 136 Vt. 417, 392 A.2d 395 (1978), which seems to indicate that the "arising or growing out of" factor would not be necessary to sustain jurisdiction under Rule 4(e) and § 913(b). There the court said:

ment against it the contact or activity shall be deemed to be doing business in Vermont by that foreign corporation and shall be equivalent to the appointment by it of the secretary of the state of Vermont and his successors to be its true and lawful attorney upon whom may be served all lawful process in any action or proceedings against it arising or growing out of that contact or activity, and also shall be deemed to be its agreement

that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or country where it is incorporated according to the law of that state or country.

4. See note 2 *supra.*

[W]e think it a fair inference that VWAG is engaged in manufacturing and selling cars for the American market, of which Vermont is a part, through the system described. This activity we hold to be the "active participation in the Vermont market" upheld as a basis for jurisdiction in *O'Brien, supra*, and to meet the "minimum contacts" test first outlined in *International Shoe* . . .. Our V.R.C.P. 4(e) embodies the "minimum contacts" test . . .. We think it fair to view defendant's *general course of conduct as purposefully directed toward Vermont and as inevitably affecting persons in this state; from this activity, it would seem equitable to imply submission to jurisdiction.*

*Id.* at 419, 392 A.2d 397 (emphasis added). *See also Arts–Way Manufacturing Co. v. O'Brien*, No. 77–197 (D.Vt., filed Aug. 15, 1977) (unpublished opinion and order on motion to dismiss, Oct. 18, 1979, at n.2) (treating requirement of causal nexus in Vt.Stat. Ann. tit. 12, § 855 as "one of statutory derivation").

The question remains whether in this case there were continuous, intentional, and active Vermont contacts sufficient to support jurisdiction. *Cf. Bard Building Supply Co. v. United Foam Corp.*, 137 Vt. 125, 129, 400 A.2d 1023 (1979) (discussing requirement under § 855 when tort occurred in the state, but suggesting underlying standards); *see also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 565–67, 62 L.Ed.2d 490 (1980). Although appellant's jurisdictional allegation in his complaint would be inadequate under Vermont law, *cf. O'Brien v. Comstock Foods, Inc.*, 123 Vt. 461, 464–65, 194 A.2d 568, 571 (1963) (before new Vermont Rules of Civil Procedure enacted), under the liberal rules of federal pleading there is a sufficient question raised by the answers to Braman's interrogatories to require consideration of the jurisdiction issue by the district court, *Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir. 1976) (affidavits and other extra–pleading materials may be considered on a motion challenging jurisdiction); 5 C. Wright & A.

Miller, *supra*, Civil § 1364, at 669, § 1366, at 676.

The interrogatories and the answers to them omit possibly significant information bearing on this remaining issue, which would permit decision here, but they do. disclose some contacts with Vermont. Both the Clinic and Hospital are parties to agreements with Vermont hospitals and health centers whereby the Hospital and Clinic supply specialty backup services as determined from time to time; the Clinic is a party to an agreement with the Veterans Administration Hospital in White River Junction, Vermont whereby members of the defendant's medical staff serve as consultants; and the Hospital is a party to an agreement with the Springfield Hospital of Springfield, Vermont, involving emergency transfers and with the University of Vermont in Burlington, involving student affiliation for clinical education, as well as with the Cooperative Health Information Center in South Burlington, Vermont for a shared data service. But these various agreements are not in the record before us; we do not know specifically what they provide in terms of the appellees' activities, if any, in Vermont. It is a question for decision below whether there are substantial relations, continuing in nature and involving considerable activity and exchange with Vermont medical providers.

We recognize that the Hospital and Clinic maintain listings in the White River Junction, Vermont, Upper Valley Area telephone directory and the Barre–Montpelier, Vermont, telephone directory, which cover substantial regions. We note that in the past five years, more than 33% of the defendant Clinic's and of the defendant Hospital's patients have been residents of Vermont. In addition, both corporations are parties to an agreement with Blue Cross/Blue Shield for New Hampshire and Vermont, a bi–state organization that is the largest single provider of medical insurance coverage in the State of Vermont. Employees or other persons associated with the Clinic and the Hospital serve on the board

of directors of this Blue Cross/Blue Shield organization and thus may affect the cost and quality of medical service supplied in Vermont. Whether there are other contacts with Vermont does not appear in the record but, of course, it will be open to the district court on further hearing to pursue the question as it sees fit.

However, the factors listed above may serve to distinguish appellees from the defendant in *Benson v. Brattleboro Retreat*, 103 N.H. 28, 164 A.2d 560 (1960), Annot., 84 A.L.R.2d 409, a controversy in which a Vermont hospital was sued in New Hampshire. In that case it appeared from the record that the hospital did not have "any agents in the State of New Hampshire channeling patients to" it. *Id.* at 29, 164 A.2d at 561. The only contacts with the forum state were that the defendant hospital had sold a tract of undeveloped land to the State of New Hampshire for one dollar some fourteen years before the commencement of the action and that the defendant's board of trustees had held two meetings in New Hampshire at the "summer home" of a trustee who could not go to Vermont because of a broken leg.

If the district court finds jurisdiction in this case, it will have to consider the affirmative defense concerning appellant's failure to comply with N.H.Rev.Stat.Ann. § 507–C:5, which requires plaintiffs in actions for medical injury to notify defendants of their intent to sue at least sixty days before bringing suit, and will have to determine whether this requirement is substantive in nature under *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), and its progeny.

Judgment reversed and cause remanded for further proceedings.