John H. STUART, individually and on behalf of all similarly situated plaintiffs

v.

FEDERAL ENERGY SYSTEMS, INC., George L. Yost, Jr. and Vernon L. Williams.

Civ. A. No. 82–261.

United States District Court, D. Vermont.

Nov. 14, 1984.

Robert P. Davison, Jr., Stowe, Vt., for plaintiff.

David H. Greenberg, Bloomberg & Greenberg, Burlington, Vt., for defendants.

## OPINION AND ORDER

COFFRIN, Chief Judge.

This action was initially filed by a Vermont citizen against a California corporation known as Federal Energy Systems, Inc. (FES). Plaintiff has alleged that he was defrauded in the purchase of a franchise to sell energy management technology in Vermont. Plaintiff subsequently amended his complaint to add as defendants the corporation's Treasurer/Secretary Vernon Williams and its National Marketing Director, George Yost. Yost and Williams have now moved to dismiss the complaint against them individually for lack of personal jurisdiction.[1] A hearing was held on this issue, and the court heard arguments based on defendants' affidavits and plaintiff's testimony. For the reasons stated below, defendants' motion is denied.

In an earlier decision regarding personal jurisdiction over the defendant corporation, the court found sufficient minimum contacts based on the fact that defendant shipped goods to Vermont, advertised in a national publication, and received royalties on plaintiff's sales in Vermont. *Stuart v. Federal Energy Systems, Inc.*, No. 82–261, slip op. at 6 (D.Vt. Dec. 20, 1983). The court held defendant's contacts with Vermont sufficient to support jurisdiction based on its view that defendant's conduct was purposefully directed towards Vermont and inevitably affected persons there. *Id.* (citing *Braman v. Mary Hitchcock Memorial Hospital*, 631 F.2d 6, 9 (2d Cir. 1980)).

*Background*

Defendants Yost and Williams argue that the contacts of the corporation have not been their own personal contacts with Vermont, and that it is not otherwise sufficient for personal jurisdiction that they have received economic benefit from the corporation's activities in Vermont. More specifically, in their affidavits they maintain that they have never been in the State of Vermont.[2] Neither owns property in Vermont, nor has an office in the state. Further, they contend that they have never sent agents or representatives into the state for any purpose. Although the plaintiff claims that he received four pieces of equipment from California, neither defendant admits to having sent it. They contend, rather, that the corporation shipped the equipment. Both defendants deny having responsibility for advertising franchises in the State of Vermont. They admit that they discussed details surrounding plaintiff's purchase of an FES franchise with the plaintiff when he visited them in California. Williams admits to having spoken with plaintiff on the phone on numerous occasions, but insists that he only initiated one call. Yost, on the other hand, maintains that he has never had an occasion to speak with the plaintiff on the telephone. Defendants' claim that their contact with the plaintiff arose only after he contacted their corporation following up an advertisement in a national publication.

Plaintiff testified that he read an FES advertisement in a periodical published by the National Society for Professional Engineers. The periodical has a national circulation of approximately 30,000–40,000 copies per month. He is a member of the Vermont Society of Engineers, an affiliate

---

1. Defendants' motion also listed failure to state a claim as a ground for dismissal. Although defendants' memorandum in support of their motion addressed only the jurisdictional question, the court notes that plaintiff has indeed stated a claim. It is well established that "[a] corporate officer can be held liable for a tort in which he personally participated, and the person wronged may proceed against him, although the corporation may also be liable." *MacMillan Co. v. I.V.O.W. Corp.*, 495 F.Supp. 1134, 1137 (D.Vt.1980) (citing *New England Acceptance Corp. v. Nichols*, 110 Vt. 478, 8 A.2d 665 (1939)).

2. Mr. Yost has never been in Vermont except to appear in court in this matter.

of the national group, of which there are approximately 200 or 300 members. After seeing the advertisement, plaintiff claims that he telephoned FES to inquire about the benefits of purchasing an FES energy management franchise. Plaintiff disputes defendant Yost's contention that Yost never spoke with him by telephone. Plaintiff maintains that defendant Yost spoke with him on the telephone prior to his February, 1982 trip to California, talking of the tremendous financial gains to be had from purchasing a franchise and encouraging him to come to California. On another occasion in the spring of 1982 plaintiff claims that defendant Yost called him and plaintiff questioned him regarding FES's lack of exclusive rights. Plaintiff agrees with defendant Williams' assertion that they spoke on the telephone on several occasions and that only one phone call was initiated by Williams. Plaintiff's essential claim is that the defendants perpetrated a fraud on him in their individual capacities with full knowledge that their activities were directed at the State of Vermont and that the harm would occur in Vermont. He maintains that in phone calls and discussions with him, defendants, in furtherance of their own motives, intentionally misrepresented facts to induce him to purchase a spurious franchise.

## Discussion

■ When considering a 12(b) motion for lack of jurisdiction a district court has considerable procedural leeway. *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir.1981). The court may consider affidavits, conduct a hearing on the merits, or grant discovery. *Id.* In ruling on this motion, we have considered defendants' affidavits, plaintiff's testimony and the Consolidated Amended Complaint.

■ The burden of proving the facts necessary to sustain jurisdiction is on the plaintiff. However, when a determination of the jurisdictional facts is intertwined with and may be dispositive of questions of ultimate liability, a "threshold" showing of jurisdiction is all that is required. *See Vermont Castings, Inc. v. Evans Products Co.*, 510 F.Supp. 940, 944 (1981).

■ As this is a case under diversity jurisdiction, federal jurisdiction over a nonresident defendant may be asserted only to the extent permitted by Vermont's "long-arm" statute. *Braman v. Mary Hitchcock Memorial Hospital*, 631 F.2d 6, 7 (2d Cir. 1980) (citing *Arrowsmith v. United Press International*, 320 F.2d 219, 229 (2d Cir. 1963) (en banc)). The Vermont long-arm statute provides for suit against an out-of-state defendant who has, or to whom may be imputed, contacts or activities within the state "sufficient to support a personal judgment against him." Vt.Stat.Ann. tit. 12 § 913(b). The Vermont long-arm statute extends to the outer limits permitted by the Due Process Clause of the Fourteenth Amendment. *Braman, supra*, at 7.

■ Jurisdiction over the defendants may be thus asserted only if there exist "minimum contacts" between defendants and Vermont, such that the maintenance of the suit "does not offend the 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Under Vermont law the cause of action need not "arise out of" the minimum contacts of the defendant with the state, provided that the defendant's activities are reasonably sufficient to support jurisdiction. *Braman, supra*, at 8. If the defendant has purposely availed himself of the privileges and protections of a state's laws, and he ought reasonably to foresee that his activities may have potential consequences in that state that would require him to defend an action there, he will be amenable to *in personam* jurisdiction. *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1948).

To assert personal jurisdiction over the defendants in their individual capacities, we must find an independent basis apart from our earlier determination of jurisdiction over the corporation. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir.1980). "What is required is some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." *Id.* Because the issue of personal jurisdiction is intertwined with issues of liability, this showing requires us to consider the substantive law pertaining to personal liability of corporate officers. Under Vermont law a corporate officer can be held liable for a tort in which he personally participated and the person wronged may proceed against him, although the corporation may also be liable. *MacMillan Co., supra* note 1. *See also Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 605–06 (3d Cir.1978) (corporate officer held liable where he was the "central figure" in the alleged illegal activities of the corporation; *Marks v. Polaroid Corp.*, 237 F.2d 428, 435 (1st Cir.1956) (corporate officer held liable where he "not only actively participated in the business of the corporation but also directly contributed to the corporation's [patent] infringement"). Thus, for this court to have the power to assert jurisdiction over the defendants, the plaintiff must allege sufficient facts to establish that the defendants personally participated in the transaction causing his injury. Having considered defendants' affidavits and plaintiff's testimony, along with the Consolidated Amended Complaint, we conclude that the plaintiff has made such a showing of jurisdiction.

In *Calder v. Jones*, —— U.S. ——, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court had occasion to decide whether a California court could exercise personal jurisdiction over two Florida residents, a reporter and an editor for a national magazine that had published an allegedly libelous article about an entertainer in California. The article had been written and edited by the Florida defendants. The Court found sufficient contacts under the "effects" test established in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980). Although the story was written by two Florida residents in the State of Florida, the court determined that the "brunt of the harm" occurred in California where the plaintiff/entertainer resided and where her reputation was impugned.

It is significant to point out that while the Court rejected the suggestion that the First Amendment enter into the analysis, it based its decision on an intentional tort analysis. The unanimous decision rested on the Court's finding that the defendants had engaged in "intentional, and allegedly tortious, actions expressly aimed at California." *Calder*, 104 S.Ct. at 1487. Moreover, it found that the defendants knew that the article would have a "potentially devastating impact" upon the plaintiff in California since the magazine had a large circulation there and the plaintiff was a celebrity residing there. Rejecting defendants' arguments that they were mere employees and, thus, had no economic stake in the newspaper, the Court held that personal jurisdiction over them in California was proper "because of their intentional conduct in Florida calculated to cause injury to respondent in California." *Id.* at 1488.

We believe that *Calder* dictates the result in this case. Plaintiff's amended complaint alleges that defendants Williams and Yost perpetrated a fraud aimed at Vermont. "[Defendants] are correct that their contacts with [the forum state] are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Id.* at 1487. Neither party disputes that defendants Williams and Yost at some point made personal contact with the plaintiff. Whether they spoke with him via telephone or in person in California is irrelevant. We know of no doctrine which permits fraudulent conduct whenever the defrauded party initiates discussion. The critical fact is that the defendants, once they had knowl-

edge that plaintiff resided in Vermont and that he was opening up an FES franchise covering the State of Vermont, knew that they were engaging in "intentional, and allegedly tortious, actions expressly aimed at" Vermont. *Id.*

The fact that plaintiff visited defendants in California or that some of the discussions surrounding plaintiff's purchase of a franchise took place in California does not take away the power of this court to assert jurisdiction over them. The *Calder* test looks to where "the brunt of the harm occurs." *Id.* Just as the plaintiff in *Calder* "[was] the focus of the activities of the defendants out of which the suit arises," so, too, is the plaintiff in the instant case. *Id.* at 1486. Once the defendants knew that plaintiff was a Vermont resident who planned to open up a Vermont franchise, they knew that their alleged misrepresentations "would have a devastating impact" on him and that the harm would occur in Vermont. *Id.* at 1487.[3]

Defendants' contention that they did not participate in the alleged fraud perpetrated on the plaintiff individually but only in their capacity as corporate representatives is no more persuasive than defendants' analogy in *Calder*. Defendants in that case characterized their situation as that of a hypothetical welder employed in Florida who works on a boiler which later explodes in California. They argued that the welder should not be held liable because he "has no control over and derives no direct benefit from his employer's sales ...." *Id.* The Supreme Court rejected that argument outright, reminding the defendants that they were not charged with "mere untargeted negligence." *Id.* We think the Supreme Court analysis is especially appropriate here where the defendants were not mere employees, but the primary promoters of the franchise and the moving spirit of the corporation.

The essence of *Calder* is that intentional tortfeasors should be prepared to defend themselves in any jurisdiction where they direct their alleged tortious conduct. To paraphrase the Supreme Court, an individual injured in Vermont need not go to California to seek redress from persons who, though remaining in California, knowingly cause the injury in Vermont. *Id.* Like the editor and the reporter in *Calder*, defendants in the instant case "are primary participants in an alleged wrongdoing intentionally directed at [the forum state]." *Id.* As such, they must reasonably anticipate being haled into court in Vermont.

We hold that the plaintiff has made a *prima facie* showing of jurisdiction. We do not base personal jurisdiction on the uncontested jurisdiction over defendants' corporation. Rather, defendants' personal participation in the actions which caused plaintiff harm provides a distinct basis for this court's assertion of personal jurisdiction over them. Defendants may, of course, raise the jurisdictional issue again at trial should the facts then appear significantly different than as alleged.

### Conclusion

Accordingly, it is hereby ORDERED that defendants Yost and Williams' motion to dismiss for lack of personal jurisdiction is denied.

---

**3.** Defendants' claim that plaintiff is improperly advocating a piercing of the corporate veil under the guise of a jurisdictional analysis is misdirected. A court may properly assert personal jurisdiction over individuals who are joint tortfeasors with the corporation. Fraud is an intentional tort, and personal jurisdiction may be had over individuals who commit a tort in furtherance of personal motives, wholly apart from a determination of jurisdiction over the corporation which they represent. *MacMillan Co., supra* note 1, at 1137.