810 F.Supp. 579 (1992)
Todd BECHARD, Plaintiff,
v.
George CONSTANZO, M.D., and Surgical Associates of Plattsburgh, Defendants.
No. 2:91-CV-380.
United States District Court, D. Vermont.
December 4, 1992.
*580 *581 Patricia S. Orr, Manchester Law Offices, P.C., Burlington, VT, for plaintiff.
James A. Resila, Carter, Conboy, Bardwell, Case, Blackmore & Napierski, Albany, NY, for defendants.

OPINION AND ORDER
PARKER, Chief Judge.
This is a diversity action based on a claim of medical malpractice. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff, Todd Bechard, resides in Vermont. Defendants, George Constanzo, M.D., and his practice group, Surgical Associates of Plattsburgh, are located in New York.
Presently before the Court is a Motion for Partial Summary Judgment filed by the plaintiff to address two affirmative defenses raised by the defendants: lack of personal jurisdiction and improper venue. Also before the Court is a cross motion filed by defendants raising the same issues of lack of personal jurisdiction and improper venue, styled as a Motion to Dismiss, and requesting relief under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).[1] Time for discovery on these issues was granted by this Court on April 26, 1992. The present motions before the Court were filed in August, 1992, at the completion of this discovery process. Recognizing that a motion to dismiss is a more appropriate procedural vehicle for resolving personal jurisdiction issues than a motion for summary judgment, this Court first turns to defendants' motion to dismiss. See Beacon Enterprises Inc. v. Menzies, 715 F.2d 757, 762 n. 5 (2nd Cir.1983).

Motion to Dismiss
A motion to dismiss challenges the sufficiency of the plaintiff's Complaint and averments. In deciding a motion to dismiss under Rule 12(b)(2), the Court assumes the truth of the facts as alleged by plaintiff and tests their sufficiency in support of the Court's jurisdiction over the defendants. The Court has considerable procedural leeway in deciding this motion. The Court, having permitted discovery in aid of the motion, may rule on the motion on the basis of the pleadings and papers filed. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2nd Cir.1981).
Plaintiff bears the burden in this instance. That is, once a defendant raises a claim of lack of personal jurisdiction, plaintiff must make a prima facie showing that this Court may assert jurisdiction over the defendants in this action. Savin v. Ranier, 898 F.2d 304, 306 (2nd Cir.1990). Furthermore, plaintiff's prima facie showing must be supported by facts. As stated by the Second Circuit:
[T]he nature of plaintiff's obligation varies depending on the procedural posture of the litigation.... After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts, that if credited by the trier, would suffice to establish jurisdiction over the defendant.
Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2nd Cir.) cert. denied, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).
Viewing the facts in the light most favorable to the plaintiff, without doubt, plaintiff in this case has failed to carry his burden. The facts, as presented by the plaintiff at the conclusion of discovery, firmly demonstrate the absence of jurisdiction over the defendants.

FACTUAL BACKGROUND
The alleged tort in this case occurred in May, 1989, while plaintiff, Todd Bechard, *582 was a resident of Chazy, New York. He received the alleged negligent medical treatment from the defendants within the State of New York. He then spent three months in a Vermont hospital where he received treatment from Vermont physicians. He returned to New York in August, 1989. In July, 1991, plaintiff moved to Vermont. This action was filed on November 25, 1991. Defendants were served on December 4, 1991, at their offices in Plattsburgh, New York, by a Clinton County Deputy Sheriff.
Defendant Constanzo is a surgeon, licensed to practice medicine in New York. His principal place of business is in Plattsburgh, New York. Surgical Associates of Plattsburgh is a professional corporation consisting of four physicians, including defendant Constanzo, engaged in providing health care services. Its principal place of business is also in Plattsburgh. Discovery related to the issues of personal jurisdiction and proper venue revealed the following facts:
1. Defendants maintain an "active" patient list. A list was generated on February 20, 1992 covering the prior 18 month period. The list contained 4,761 "active" patients. Fourteen of these patients, or less than one half of one percent, are Vermont residents. Two of these fourteen patients from Vermont were seen as emergencies. Seven of the fourteen had follow-up visits to the defendants.
2. In 1990, defendants raised $958,110.61 in revenue, of which $2,646.56 came from Vermont residents. In 1991, the revenue raised by defendants was $979,360.86 of which $9,273.21, or less than one percent, came from Vermont residents. Defendants billed and received payment for some of the services rendered from Blue Cross/Blue Shield of Vermont and New Hampshire and Medicare. Some payment was also received from the Vermont patients themselves.
3. Defendants do not advertise in Vermont, nor do they solicit patients from Vermont physicians.
4. The record is devoid of any evidence that defendants transact any business within Vermont. Defendants are not represented by an agent in Vermont, nor have they utilized Vermont courts to enforce payment of any deficiency balances from their Vermont patients. The parties do not dispute these essential facts, rather, they dispute their significance.

DISCUSSION

I. Personal Jurisdiction

The jurisdictional question raised in this case is whether the limited contacts between the nonresident defendants and residents of Vermont are sufficient to establish this Court's in personam jurisdiction where the cause of action does not arise from any contacts the defendants might have with Vermont. In diversity actions, personal jurisdiction issues involving nonresident defendants are resolved by a two part inquiry. First, the plaintiff must make a showing that the state long-arm statute reaches the defendants; and second, the Court's assertion of jurisdiction must comport with the requirements of the Due Process Clause. Braman v. Mary Hitchcock Hospital, 631 F.2d 6, 7 (2nd Cir.1980).

A. Vermont's Long Arm Statute: 12 V.S.A. § 913
Service of process on the defendants in this action was made in accordance with one of Vermont's two long-arm statutes, 12 V.S.A. § 913(b), which provides:
Upon service, and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.
12 V.S.A. § 913(b) (1973).[2] This provision has been construed by Vermont courts as *583 reflecting a "clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause." Northern Aircraft, Inc., v. Reed, 154 Vt. 36, 40, 572 A.2d 1382 (1990); Blue Compass Corp. v. Polish Masters of America, 777 F.Supp. 4, 5 (D.Vt.1991); Sollinger v. Nasco Int'l, Inc., 655 F.Supp. 1385, 1387 (D.Vt.1987). Accordingly, the question of whether Vermont's long-arm statute reaches a defendant merges with the second prong of the Court's inquiry, the federal due process question.

B. Due Process Requirements
Due process requirements protect an individual who does not have meaningful contacts or ties with a forum state from being subjected to binding judgments in that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985). This protection arises as a function of an individual's liberty interest rather than out of federalism concerns. Id. at 472 n. 13, 105 S.Ct. at 2182 n. 13.
The constitutional touchstone for establishing personal jurisdiction is by now quite clear: a defendant must have established certain minimum contacts with the forum state before a court may assert personal jurisdiction. Id. at 474, 105 S.Ct. at 2183. The determinative factor is foreseeability, i.e., a defendant's conduct and connection with the forum must be such that he should reasonably anticipate being haled into court there. Id. at 472, 472, 105 S.Ct. at 2181, 2182 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In judging whether there are sufficient minimum contacts, a court's proper focus is on the defendant's relationship with the forum and the litigation. Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984). Unilateral activity by a person claiming a relationship with a defendant is not a sufficient basis for jurisdiction. Likewise, random, fortuitous or attenuated contacts are also insufficient. Burger King, 471 U.S. at 474-75, 105 S.Ct. at 2183. Contacts are also considered in light of other factors to determine whether jurisdiction based on these contacts would offend "traditional notions of fair play and substantial justice." Id. at 476, 105 S.Ct. at 2184 (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

1. Minimum Contacts

However, it is not necessary that the cause of action being litigated arise out of contacts a defendant has with a forum state in order for a court to assert in personam jurisdiction over that defendant. Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, reh'g denied, 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952); Braman, 631 F.2d at 8. In other words, if a person has established sufficient contacts with the jurisdiction, in general, to justify the assertion of personal jurisdiction, jurisdiction exists without regard to the contacts or lack thereof in a specific case. Personal jurisdiction in such cases falls under the umbrella of what has been termed a court's "general jurisdiction."[3]Helicopteros, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. The exercise of general jurisdiction comports with due process requirements when it is based on general business contacts which are continuous and systematic in nature. Id. It is not the quantity of contacts, but the nature and quality of a defendant's activities which will confer jurisdiction. Perkins 342 U.S. at 447, 72 S.Ct. at 419. Thus, the question before the Court in this case is whether the defendants' general business contacts with Vermont were continuous, systematic and of a sufficiently substantial nature as to permit *584 a Vermont court to entertain a cause of action.[4]
In Perkins v. Benguet Mining Co., the seminal case on the doctrine of general jurisdiction, the Supreme Court constructed its "continuing and systematic" contacts standard from the language and reasoning of its earlier opinion in International Shoe:
... there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities (citations omitted).
... [S]ome of the decisions holding the corporation amenable to suit have been supported by resort to legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through acts of its authorized agents. [citations omitted] But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction (citations omitted).
... Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of due process to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations (citations omitted).
Perkins, 342 U.S. at 446-47, 72 S.Ct. at 418-19 (emphasis added).
At issue in Perkins was the "continuous and systematic supervision of the necessarily limited wartime activities of the company." Id. at 448, 72 S.Ct. at 419. The president, who was also general manager and principal stockholder, maintained an office in the forum state from which he conducted a number of corporate activities on behalf of the company. The Court concluded that the corporation had sufficient contacts with the forum state to meet the reasonableness requirements of due process. Id. at 448, 72 S.Ct. at 419.
The Court further elaborated on the doctrine of general jurisdiction and the use of the "continuous and systematic general business contacts" standard in the Helicopteros case. 466 U.S. at 413-18, 104 S.Ct. at 1872-74. In that case, the defendants had purchased equipment from a company in the forum state, sent personnel to the forum state for training related to those purchases, and had sent an officer of the corporation to the forum for contract negotiations. Finding that the defendants had no place of business in the forum state and had never been licensed to practice there, the Court held that the limited business contacts, although they included substantial purchases, did not meet the requirements of due process to confer jurisdiction. Id. at 416-18, 104 S.Ct. at 1873-74. Relying on the language of Perkins, the Court ruled that mere purchases, even at regular intervals, and the related brief presence by employees were not the type of "continuous and systematic general business contacts" envisioned by Perkins as supporting the exercise of general jurisdiction. Id. at 416-17, 104 S.Ct. at 1873.
Prior to the decision in Helicopteros, the Second Circuit considered a case involving a medical malpractice claim by a Vermont resident against a nonresident defendant hospital. See Braman, 631 F.2d at 6. The Second Circuit ultimately remanded the case for further review of the contacts the hospital had with Vermont. However, during the course of its opinion, the Court discussed the type of contacts required under Perkins. Minimum contacts in cases involving general jurisdiction must consist of "substantial relations, continuing in nature and involving considerable activity and exchange" with Vermont residents. Braman, 631 F.2d at 9. Of significance, the Court noted the efforts of the New Hampshire hospital and its agents to channel *585 Vermont residents to its facilities in New Hampshire. Although largely dicta, the Court went on to suggest distinctions between the facts of the case before it, which suggested potential for personal jurisdiction, and the facts presented in a New Hampshire case. The New Hampshire case involved a Vermont hospital which had insubstantial contacts with New Hampshire. At one time it had sold land to the State of New Hampshire and twice its board of trustees had held meetings in the forum. Braman, 631 F.2d at 10. "Substantial relations, continuing in nature and involving considerable activity and exchange" were glaringly absent in that New Hampshire case. The Second Circuit's focus in Braman on solicitations and the level of general business activities of the defendant hospital are consistent with the concerns of the Supreme Court in Helicopteros.
The standard enunciated in Perkins and its application in that case as well as in the Helicopteros and Braman decisions constrain this Court's assertion of in personam jurisdiction in the instant action. Perkins and its progeny suggest that, for purposes of conferring general jurisdiction, a nonresident defendant must actively pursue business connections in the forum. In the case at bar, plaintiff has failed to provide a record indicating that defendant Constanzo or his practice group maintain traditional general business contacts with Vermont. Defendants do not maintain an office in Vermont, nor is there evidence that they are licensed to practice in Vermont. They do not own property in the state. Moreover, no facts have been presented to show that they solicit business from Vermont residents or otherwise intentionally and actively pursue or conduct general business contacts in Vermont. The most that can be said is that a small number of Vermont residents either occasionally wend their way to Plattsburgh, New York for treatment, or become ill while visiting New York and seek treatment on an emergency basis. In keeping with decisions by other courts, this Court believes that the mere unsolicited treatment of Vermont residents by an out-of-state physician in an out-of-state hospital or office is not sufficient contact with Vermont to establish this Court's general jurisdiction over that physician. See Kennedy v. Freeman, 919 F.2d 126, 129 (10th Cir.1990) ("Courts have found jurisdiction over nonresident doctors where they purposefully directed their actions at plaintiffs' states," e.g., when doctors have "intentionally solicited business from a state."); Wolf v. Richmond County Hospital, 745 F.2d 904, 912 (4th Cir.1984) (Noting that cases in which doctors or medical facilities were found subject to personal jurisdiction involved active solicitation, referrals or transfer contacts), cert. denied, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); Walters v. St. Elizabeth Hospital 543 F.Supp. 559 (W.D.Pa.1982) (No jurisdiction over defendants where none of the treatment of residents of forum occurred within the forum state; out-of-state hospital's acceptance of forum residents as patients is not a business activity in the forum state).
Indeed, all of the contacts alleged here by the plaintiff result from the unilateral activity of third parties unrelated to this action. They are of an even more attenuated and random nature than those contacts found insufficient in Helicopteros. Plaintiff has thus failed to establish a prima facie showing of the minimum contacts sufficient for this Court to exercise general jurisdiction over these defendants.

2. Fair Play and Substantial Justice

With the assumption that minimum contacts exist in this case, plaintiff argues that requiring defendants to defend this action in Vermont is reasonable and comports with the notions of fair play and substantial justice encompassed by the Due Process Clause. However, plaintiff has cited no authority, and this Court has uncovered none, that supports the exercise of general jurisdiction on this basis when the requisite minimum contacts are absent. Notably, in Helicopteros, the Court did not reach the issue of fair play, resting its opinion solely on the finding that the defendant's contacts were insufficient to comport with due process. In cases involving determinations as to specific jurisdiction, *586 the Supreme Court has stated that a court should consider whether other factors would "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Burger King, 471 U.S. at 477, 105 S.Ct. at 2184; see also Asahi Metal Industrial Co. v. Superior Court, 480 U.S. 102, 113-16, 107 S.Ct. 1026, 1032-34, 94 L.Ed.2d 92 (1987) (citing numerous factors for consideration). For example, a plaintiff's contacts with the forum may be "so manifold as to permit jurisdiction when it would not exist in their absence." Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984). In Calder, a libel case, the Court held that when injury occurs in the forum and the plaintiff is the focus of the defendant's intentional out-of-state activities from which the claim arose, plaintiff's substantial contacts with the forum may fulfill due process requirements. The rationale of the Court in Calder focused on foreseeability; i.e., the defendant should have foreseen that the effects of his conduct would cause injury to the plaintiff in the forum state. Id. at 789-90, 104 S.Ct. at 1487. Clearly, that is not the case here. Not only is this case not one involving specific jurisdiction, but also, defendants' could hardly have reasonably foreseen that their allegedly unintentional tortious conduct toward the plaintiff, then a resident of New York, while treating the plaintiff in New York, would have effects or a result in Vermont.
Other considerations on the reasonableness of the Court's exercise of jurisdiction include: (1) the burden on the defendants in forcing them to defend an action in the forum state; (2) plaintiff's interest in obtaining relief in a convenient forum; (3) the forum's interest in adjudicating the dispute; (4) the interstate judicial system's interest in obtaining the most efficient resolution; and (5) the shared interest of all the states in furthering fundamental substantive social policies. Asahi Metal, 480 U.S. at 113, 107 S.Ct. at 1032. While the balance of these considerations can defeat jurisdiction where minimum contacts exist, Burger King, 471 U.S. at 477-78, 105 S.Ct. at 2184-85, there has been no suggestion that they could confer jurisdiction without such contacts.
Even if this Court were convinced that it could reasonably assert general personal jurisdiction in a case where the requisite minimum contacts are lacking, the plaintiff has failed to make a persuasive argument that the circumstances of this case call for such a result. Vermont's only possible interest in adjudicating this dispute is in ensuring recovery for one of its residents. This interest arguably arises because plaintiff elected to seek treatment and to recover in Vermont rather than New York during the three months immediately following the allegedly negligent conduct of the defendants. Additionally, plaintiff has more recently become a Vermont resident. These considerations are hardly a sufficient basis for asserting general jurisdiction where the defendants' contacts do not rise to the level of "minimum contacts," particularly in light of the fact that the alleged tort did not occur in Vermont and at the time the cause of action arose, plaintiff lived in New York.
Plaintiff also argues that litigating the suit in Vermont is more convenient for him than litigating it in New York, and that defendants are not unduly burdened by being required to defend here. Such considerations would make it difficult for a defendant to defeat jurisdiction where minimum contacts exist. However, they hardly justify the assertion of general jurisdiction where the defendants have not continuously and systematically established any contacts with Vermont and where all ties to this forum are the result of unilateral activity by third parties. Maintenance of a suit under such circumstances would offend the traditional notions of fair play and substantial justice that are embraced by the Due Process Clause. Moreover, the disadvantage plaintiff complains of is not so gravely difficult or inconvenient that it unfairly creates a severe disadvantage to plaintiff in comparison to defendants. See Burger King, 471 U.S. at 478, 105 S.Ct. at 2185.
Accordingly, the exercise of this Court's general personal jurisdiction under the *587 facts of this case would exceed the limits of the Due Process Clause. Defendants' contacts with residents of Vermont are insufficient to establish minimum contacts such that the maintenance of this cause of action in Vermont would comport with traditional notions of fair play and substantial justice.

CONCLUSION
Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. Plaintiff's motion for partial summary judgment is thereby rendered moot. This case is DISMISSED.
Dated at Burlington, in the District of Vermont, this 3 day of December, 1992.
NOTES
[1] In accompanying correspondence, defendants requested that their motion to dismiss, with its accompanying affidavit, also be considered as a response to plaintiff's motion for partial summary judgment.
[2] Vermont's second long-arm statute, 12 V.S.A. § 855, governs service of process on a foreign corporation where the cause of action arose out of the corporation's contacts with the State of Vermont. 12 V.S.A. § 855 (1973); Vermont Castings, Inc. v. Evans Products Co., 510 F.Supp. 940 (D.Vt.1981).
[3] "Specific jurisdiction" may be established where the cause of action arises out of or relates to a defendants contacts with the forum state. Helicopteros, 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8.
[4] In cases where a court seeks to assert specific jurisdiction, the appropriate inquiry is "whether a defendant has `purposefully directed' his activities at residents of the forum." Sollinger, 655 F.Supp. at 1387.